UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

LILLIAN L KING ET AL                           CASE NO.  2:19-CV-01677

VERSUS                                         JUDGE TERRY A. DOUGHTY

WILLIAM V KING ET AL                           MAGISTRATE JUDGE KAY

MEMORANDUM RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 78] filed by

Defendants William V. King, Toby Ayes Leonard, and J. Michael Veron (collectively

"Defendants"). An opposition [Doc. No. 93] was filed by Plaintiffs Lillian L. King, Frances E.

Jansen, and Mary Nell Sinai (collectively "Plaintiffs"). Defendants filed a reply [Doc. No. 94] to

the opposition. Oral arguments on the Motion were heard on Friday, September 2, 2022.

For the following reasons, the Motion is **GRANTED**.

I.      BACKGROUND AND PROCEDURAL HISTORY

On December 26, 2019, Plaintiffs filed suit in this Court on the basis of diversity alleging

six (6) claims against Defendants.[1] Count I requested a declaratory judgment declaring the

principal and income beneficiaries of the Voris King Trust ("the Trust") and that certain actions

taken by Bill King as the sole Trustee of the Trust were void.[2] Count II requested an accounting

pursuant to ¶ 6.9 of the Trust.[3] Counts III, IV, and V alleged breach of trust[4], breach of fiduciary

---

[1] [Doc. Nos. 1 (Complaint), 28 (Amended Complaint)]
[2] [Doc. No. 1, ¶¶ 65, 66]
[3] [Id. at ¶ 68]
[4] [Id. at ¶ 75]

duty[5], and enrichment without cause,[6] respectively. On January 28, 2021, Plaintiffs filed an Amended Complaint, which added a sixth count against Defendants, alleging fraud.[7]

The events leading up to the suit are as follows. Voris King established the Trust in 1969.[8] Voris King's four children – Charles Stirling King, Virginia King Ayres, William V. King ("Bill King"), and Alvin King – were named as income beneficiaries.[9] The Trust instrument designated the principal beneficiaries as "the members of a class consisting of all the Settlor's grandchildren."[10] Voris's four children were also named co-trustees of the Trust, along with Joe Tritico, who was not a King family member.[11] On September 29, 1998, a Judgment of Adoption was entered and recorded by the 14th Judicial District Court for the Parish of Calcasieu acknowledging and recognizing the adoption of Jacquelyn C. Gilbert and Geoffrey W. Gilbert[12] by Defendant Bill King.[13]

When Charles King passed in 1992, his income beneficiary status passed to Plaintiffs.[14] Following the deaths of Charles King, Virgina King Ayres, Joe Tritico, Lillian L. King ("Lillian") (the eldest child of Charles King) and Tobe Ayres Leonard (the eldest child of Virginia King Ayres) replaced their parents as co-trustees, and J. Michael Veron replaced Joe Tritico as the fifth, non-King family member trustee.[15] Additionally, according to the Trust, upon Charles Stirling King's death, the remaining trustees were to elect, by unanimous vote, the trustee who shall be

---

[5] [Id. at ¶ 81]
[6] [Id. at ¶ 86]
[7] [Doc. No. 28, ¶ 118]
[8] [Doc. Nos. 78-23, ¶ 1, 28, ¶ 7]
[9] [Doc. No. 78-23, ¶ 2]
[10] [Doc. No. 1, p. 6]
[11] [Doc. Nos. 78-23, ¶ 3, 28, ¶ 15]
[12] Jacquelyn and Geoffrey were the niece and nephew of Defendant Bill King prior to this adoption. [Doc. No. 93-3 (Deposition of Geoffrey W. Gilbert) p. 9]
[13] [Doc. No. 78-18] The adoption purportedly made Jacquelyn and Geoffrey the grandchildren of the Settlor and therefore principal beneficiaries of the Trust. The Gilberts' status as principal beneficiaries is a topic of dispute in the instant case.
[14] [Doc. No. 1, ¶ 10]
[15] [Doc. No. 78-23, ¶ 4 *referencing* Doc. No. 28]

vested with the sole power to vote shares of stock in any companies that may be at any time held by the Trust.[16] A unanimous consent form was used for that purpose.[17] A unanimous consent form dated April 30, 2000 ("the Unanimous Consent Form") included all the names and signatures of the co-trustees.[18]

The Trust has assets including mineral interests, shares of closely held Texas and Louisiana corporations, and other moveable and immovable property.[19] Since 1996, the Trust's accounting services have been performed by Douglas R. Cooley, a Certified Public Accountant.[20] Each year since at least 1996, the beneficiaries of the Trust have been provided with a schedule K-1 and a detailed financial statement, which includes an accounting of all assets, liabilities, income, expenses, and other financial information pertinent to the Trust property.[21]

The instant suit is the third suit that has been filed in relation to the Trust. In 2011, Plaintiffs Frances Elizabeth Hansen and Mary Nell Sinai filed suit in Louisiana state court against Bill King, Alvin King, Virginia King Ayres, J. Michael Veron, and Lillian.[22] Plaintiffs claimed that they were not kept adequately informed with respect to the Trust property and sought to remove Lillian as co-trustee.[23] The case was dismissed with prejudice at Plaintiffs' costs.[24]

In 2016 Plaintiffs, now joined by Plaintiff Lillian who was a named defendant in the 2011 suit, filed suit in Texas state court against Bill and Alvin King.[25] Plaintiffs' claims in the Texas

---

[16] [Doc. No 78-3, p. 9]
[17] [Doc. No. 28-4]
[18] [Id.] As discussed below, Plaintiffs dispute that Lillian actually signed the Unanimous Consent Form. *See* [Doc. No. 93, p. 20].
[19] [Id. at ¶ 5 *referencing* Doc. No. 28]
[20] [Doc. No. 78-4 (Deposition of Douglas Cooley)]
[21] [Doc. Nos. 78-5 (Deposition of Lillian), p. 15, 78-6 (Deposition of Elizabeth King Hansen), p. 14, 78-7 (Deposition of Mary Nell Sinai), p. 9, 78-8]
[22] [Doc. No. 78-23, ¶ 8 *citing* Doc. No. 23-9]
[23] [Id.]
[24] [Id. ¶ 11 *citing* Doc. No. 78-11, p. 109]
[25] [Id. ¶ 12 *citing* Doc No. 78-12]

suit largely mirrored those in the instant suit. Plaintiffs sought a declaratory judgment, accounting, and damages, and based their claims on many of the same allegations they have alleged in their Amended Complaint.[26] After substantial written discovery, Plaintiffs voluntarily dismissed the Texas suit.[27]

Pursuant to the Scheduling Order in this case, the Discovery deadline was May 11, 2022.[28] On June 14, 2022, Defendants filed a Motion to Exclude all Evidence of Damages ("Motion to Exclude").[29] In the Motion to Exclude Defendants sought dismissal pursuant to FED. R. CIV. P. 26 and 47 because the Plaintiffs the discovery deadline had passed, and Plaintiffs had not provided sufficient evidence of damages throughout discovery.[30] Oral arguments were held for the Motion to Exclude on September 2, 2022, and the Court granted the Motion to Exclude.[31]

Defendants filed the instant Motion on June 6, 2022, requesting that the Court dismiss Plaintiffs' aforementioned claims with prejudice. Defendants argue that Plaintiffs' claims against Defendants as co-trustees are prescribed/perempted under La. R.S. 9:2234.[32] Alternatively, Defendants argue that even if Plaintiffs' claims are not barred by prescription or peremption, there is no genuine issue of material fact with respect to any of the claims.

Plaintiffs argue in opposition that La. R.S. 9:2234 only applies to items disclosed on a trust accounting and that Defendants failed to disclose information; the 2016 Texas suit commenced prescription; key facts are unavailable to Plaintiffs due to Bill King suffering a debilitating stroke so summary judgment is not appropriate here; the succession waivers, which Defendants purport

---

[26] [Id.]
[27] [Id. at ¶ 13 *citing* Doc. No. 78-13] At Oral Arguments on the instant Motion the Court asked why the 2016 suit was voluntarily dismissed and the parties replied that it was dismissed because Louisiana was a more convenient forum for the litigation.
[28] [Doc. No. 63 (Scheduling Order)]
[29] [Doc. No. 75]
[30] [Id.]
[31] [Doc. No. 100]
[32] [Doc. No. 78-1, p. 15]

to waive many of Plaintiffs' claims, are ineffective; and there is still a genuine question of material fact as to whether certain people are principal beneficiaries of the Trust.[33]

The issues are briefed, and the Court is prepared to issue a ruling.

## II.   LAW AND ANALYSIS

### A.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."

"If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc*., 738 F.3d 703, 706 (5th Cir. 2013) (internal quotation marks and citation omitted).; *see also* FED. R. CIV. P. 56(c)(1).

A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248).  However, in evaluating the evidence

---

[33] [Doc. No. 93]

tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. "A non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated."  *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (citations omitted).

Note that "a district court has somewhat greater discretion to consider what weight it will accord the evidence in a bench trial than in a jury trial."  *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991); *see also Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978) ("If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved . . . . The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.").

### B.  Analysis

Many of Plaintiffs' claims fail as a matter of law because the Court granted the Motion to Exclude all Evidence of Damages.[34] Specifically, Counts III-VI all require Plaintiffs to prove damages as an essential element of the claims contained in said Counts. The Court will first address Counts I and II, which do not require damages as an element, and then it will address the remaining Counts and what effect the Motion to Exclude has on the claims contained therein.

### 1. Count I: Declaratory Judgments

Plaintiffs first seek a declaratory judgment declaring the income and principal beneficiaries of the Trust and that certain actions taken by Bill King were done without proper authority and are

---

[34] [Doc. Nos. 75, 100]

therefore void. Specifically, Plaintiffs seek to have themselves declared income beneficiaries of the Trust, including the purported 1994 trust, entitling them to a one-twelfth (1/12) interest in all income generated by the trusts from January 11, 1992, to present. Plaintiffs additionally seek to have themselves, Defendant Tobe Ayres Leonard, Jeremy Thompson King, Megan Anne King, and Cynthia Marie King (adopted) declared as the sole principal beneficiaries of the Trust. Jacquelyn C. Gilbert and Geoffrey W. Gilbert are currently income beneficiaries to the Trust, and Plaintiffs are seeking to have their status as such revoked. Plaintiffs' arguments surrounding Bill King's authority to vote largely center around a unanimous consent form and an allegation that Lillian, who was a co-trustee at the time the consent form was created, did not actually sign the form. The Court finds that there is no genuine issue of material fact with respect to any of these requested declaratory judgments.

### a.  The Beneficiaries

In Plaintiffs' Opposition,[35] they do not dispute the validity of the 1998 Judgment of Adoption. Rather, they argue that there is an issue of fact as to the Settlor's intent to include Jacquelyn and Geoffrey in the class of principal beneficiaries. Namely, Plaintiffs argue that the class of principal beneficiaries closed upon the Settlor's death and, therefore, because Jacquelyn and Geoffrey were not adopted until after the Settlor's death, they should not be included in the class. The Court rejects this argument.

When the language of the trust instrument is clear and unambiguous, the courts need not admit parol evidence to determine the settlor's intent. *See In re James C. Atkinson Clifford Tr*., 2000-0253 (La. App. 1 Cir. 6/23/00), 762 So. 2d 775, 777 *writ denied*, 2000-2262 (La. 10/27/00), 772 So. 2d 655 (Where the court affirmed an objection to admittance of parol evidence because

---

[35] [Doc. No. 93]

the terms of the trust were not ambiguous or uncertain.); *see also Matter of Calley*, 2017-0068 (La. App. 1 Cir. 9/21/17), 232 So. 3d 68, *writ denied*, 2017-1781 (La. 12/15/17), 231 So. 3d 64, 71 (Where the court determined that it need not to look beyond the plain language of the trust to determine the parties' intent); *See also Taita Chemical Co. v. Westlake Styrene Corp.*, 246F.3d 377 (5th Cir. 2001) ("[W]hen the contract is not ambiguous, this Court lacks the authority to look beyond the four corners of the document. (citations omitted)).

To determine who qualifies as a principal beneficiary of the Trust, the Court must look at the language of the Trust instrument. The Trust clearly states that: "The principal beneficiaries of this trust are the members of a class consisting of all of the Settlor's grandchildren."[36] The Court finds that this provision is clear and unambiguous and that it therefore need not look to the Settlor's intent. Additionally, the Court notes that the Trust makes several references to the descendants of Bill King. At the time the Trust was created, Bill King had no descendants. Had the Settlor intended to exclude descendants not in existence at the time of his death, the Trust could have easily done so by including language such as "all of the Settlor's grandchildren *at the time of the Settlor's death*," but no such language exists within the Trust. Plaintiffs' request that the Court read words into the Trust instrument that are not present must be denied.

La. C.C. Art. 199 provides in pertinent part that "Upon adoption, the adopting parent becomes the parent of the child for all purposes, and the filiation between the child and his legal parent is terminated, except as otherwise provided by law." Here, Defendants have provided a valid Judgment of Adoption recognizing Jacquelyn and Geoffrey as the children of Bill King. Any attempt to challenge this Judgment would be an impermissible collateral attack. *See Wilson v. Landry*, No. 6:21-CV-01224, 2022 WL 1571215, at *2 (W.D. La. May 18, 2022) ("Under the

---

[36] [Doc. No. 78-3, p. 6]

*Rooker-Feldman* doctrine, federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." (citations omitted)). Therefore, the Court finds that there is no genuine issue of material fact as to the beneficiaries of the Trust.

### b. Bill King's Authority to Vote

Plaintiffs argue that Bill King did not have authority to vote Trust shares because he was not unanimously elected as required by the Trust instruments. It is undisputed that the Unanimous Consent Form contains names and signatures of all the co-trustees.[37] Plaintiffs, however, contend that the signature that appears above Lillian L. King's name was either made by someone else or that someone else attached a previous signature to the document.[38] Plaintiffs also make arguments concerning the chronology of the signing and execution of the Unanimous Consent Form. The Court finds that the Plaintiffs' request for a declaratory judgment on this issue is barred by the doctrines of equitable estoppel, ratification, and is moot.

### i. Equitable Estoppel and Ratification

Plaintiffs argue that ratification of Bill King's authority to vote to transfer Trust stock did not occur because the Halcyon merger took place seventeen days after the 52nd meeting. This argument is without merit.

Equitable estoppel is "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *Bellsouth Advert. & Pub. Corp. v. Gassenberger*, 565 So. 2d 1093, 1095 (La. Ct. App. 1990)*; See also Am. Marine Underwriters, Inc. v. Holloway*, 826 F.2d 1454, 1457 (5th Cir. 1987) (*"Equitable estoppel is designed to foster justice by preventing a person from taking a position contrary to his prior conduct, which has been detrimentally relied upon by another person." (citations omitted))*. Lillian

---

[37] [Doc. Nos. 28-4, 93]
[38] [Doc. No. 78-5 (Deposition of Lillian)]

approved the minutes of all the meetings at which the Unanimous Consent Form was discussed.[39] In the 2011 lawsuit, in which Lillian was a defendant, she wrote a letter to the presiding judge, explaining that she had only missed one meeting of the trustees, the 53rd meeting.[40] Despite this, Plaintiffs now claim that that she was not present at the 50th or 52nd meeting. Additionally, at the 48th meeting, Lillian not only approved actions taken by Bill King in representing and voting the Trust's stock in 2014 and 2015, she also moved to authorize Bill King to represent and vote the Trust stock at their annual shareholder's meetings, "as his sole discretion is in the best interest of said Trust."[41] Lillian knew exactly what to do if she disagreed with any statement or authorization reflected in the minutes of the meetings, but did not raise any objection until now. The Court finds that the doctrine of equitable estoppel is applicable here and that Lillian is estopped from now objecting to actions to which previously acquiesced.

Ratification is defined as "a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority." La. C.C. Art. 1843. In *Stough v. 501 Ranch, Inc.*, the court found that a subsequent vote to approve stock acquisition constituted ratification of the transaction and that approval of meeting minutes supported the conclusion that the transaction was fully ratified by the shareholders. *Stough v. 501 Ranch, Inc.*, 421 So. 2d 1154, 1158 (La. Ct. App. 1982); *See also 3 A's Towing Co. v. P & A Well Serv., Inc.*, 642 F.2d 756, 7 (5th Cir. 1981) (Where the court noted that ratification has a retroactive effect and is equivalent to prior authority "so long as the unauthorized act is not violative of the corporate charter, state law, or public policy." (citations omitted)).

---

[39] [Doc. No. 78-4 (Deposition of Lillian)]
[40] [Doc. No. 78-10]
[41] [Doc. No. 78-20]

At the trial during the 2011 suit, Lillian testified that she "review[s] everything she receives."[42] She even has sent handwritten letters to Bill King requesting amendments to minutes from Trust meetings.[43] Additionally, at annual meetings regarding the stock of companies where the Trust owned shares and Lillian owned shares individually, Lillian cannot recall a single time she voted contrary to Bill King's vote.[44] Although Plaintiffs now, for the first time since the 2011 case was filed, claim that Lillian was not present at all of the trust meetings, they do not dispute that she approved each of the meeting minutes, even those that she did not attend. Lillian knew exactly how to object to minutes from the meetings but did not do so until now. Even assuming that Bill King acted without Lillian's authority, which the Court does not, the Court finds that Lillian ratified the Unanimous Consent Form that authorized Bill King to vote shares on behalf of the Trust.

### ii.    Mootness

Plaintiffs did not provide evidence that a vote cast on behalf of the Trust by Bill King at a shareholder meeting of a company at which the Trust owned stock made any difference in the outcome of the vote. Additionally, Plaintiffs did not provide evidence that any decision made by Bill King on behalf of the Trust was contrary to the Trust's interest. For example, as pointed out by counsel for Defendants at Oral Arguments, "the trust shares that [Bill King] voted to go [forward with the Halcyon merger[45]] weren't even the majority of shares. So even if you disregard those, it still would have gone through."[46] Additionally, the Halcyon merger substantially

---

[42] [Doc. No. 78-11, p. 55]
[43] [Doc. No. 78-21]
[44] [Doc. No. 78-5 (Deposition of Lillian), p. 35]
[45] The Halcyon merger is a transaction that Bill King approved on behalf of the trust mentioned by Plaintiffs in their request for a declaratory judgment and their opposition to the instant Motion. [Doc. Nos. 1, ¶¶ 65, 73, and 74, 28 ¶ 88, and 93, p. 22]
[46] [Real Time Transcript from Oral Arguments Held on September 2, 2022, at 10:16:06-10:16:14]

increased the value of the Trust.[47] Plaintiffs also have not provided any evidence of harm to the Trust that resulted from a vote of the Trust's stocks authorized by Bill King.

The Court finds that there is no issue of fact with respect to this claim. Bill King was repeatedly authorized unanimously by the trustees, including Lillian, to vote the Trust's shares of stock. There is no evidence of harm or wrongdoing that resulted from Bill King voting on the Trust's shares of stock. Plaintiffs' request for a declaratory judgment as to Bill King's authority to vote the Trust's shares of stock is denied.

### 2. Count II: Accounting

Count II of the Amended Complaint requests an accounting of all bank records, statements, and other records of the assets, liabilities, distributions, and transactions of the Trust, the purported second trust, and the Successions of Voris King and Charles King. Defendants argue that the accounting claims have been waived or are moot. Plaintiffs argue in response that the succession waivers are ineffective and that the claim is not moot because there has still been no accounting rendered for the purported second trust. The Court agrees with Defendants, and Count II is denied.

### a.  The Succession Waivers

The Court finds that Plaintiffs waived the right to a formal accounting with respect to the successions of both Voris King and Charles King. In 1998, each Plaintiff executed a "Waiver of Accounting and Approval of Discharge of Executor" that specifically waived "any requirement for a formal accounting."[48] Plaintiffs make three arguments in relation to the effectiveness of these waivers. The Court addresses each below.

### i.    The Order of the Waivers

---

[47] [Doc. No. 78-22 (Deposition of David Sigler), pp. 56-59]
[48] [Doc. No. 78-16, pp. 1, 3, 4, 6, 7, and 8]

Plaintiffs first argue that the succession waivers are ineffective because they were filed in reverse order, thus invalidating them. The waivers in the *Succession of Charles Stirling King* were filed in March of 1998. The waivers in the *Succession of Voris King* were filed in June of 1998. Plaintiffs contend that, because the *Succession of Charles Stirling King* was a beneficiary under the *Succession of Voris King*, it was impossible for the Plaintiffs to knowingly waive any issue regarding the *Succession of Charles Stirling King* before the assets from the *Succession of Voris King* belonged to the *Succession of Charles Stirling King*. The Court rejects this argument.

Plaintiffs provide no legal support for their argument about the order in which the waivers were filed, and the Court was unable to find any support for this argument in its independent research. Plaintiffs were represented by counsel when the waivers were filed, so any claim that the waivers were not entered into knowingly is met by the Court with great skepticism. Additionally, Charles Stirling King and Voris King died in 1991 and 1992, respectively. The waivers were filed in 1998 and related to their successions. The order of Charles and Voris' deaths and the order of the execution of the waivers has no legal bearing on the waivers of claims filed in their separate successions several years later.

### ii. Fraud and the Succession Waivers

Plaintiffs next argue that the waivers, even if effective, do not waive fraud. As discussed below, Plaintiffs cannot prove the required elements of fraud because the Court has granted the Motion to Exclude all Evidence of Damages. Therefore, this argument, even if correct, is now moot.

### iii. Post-Waiver Action

Finally, Plaintiffs argue that the waivers only applied to pre-waiver actions and not to any post-waiver activity. Plaintiffs cite to no legal authority in support of this argument.

The Court finds that the succession waivers waived any claim by the Plaintiffs relating to an accounting with respect to the *Succession of Charles Stirling King* and the *Succession of Voris King*. To the extent that Count II requests an accounting in relation to those two successions, the Plaintiffs waived any right to such a remedy in 1998 when they knowingly signed the succession waivers.

### b.  Mootness

Even if the succession waivers were ineffective, the Court sees no reason to grant Plaintiffs' request for accounting. It is undisputed that Plaintiffs have received a scheduled K-1 and a detailed financial statement that contain an accounting of all assets, liabilities, income, expenses, and other financial information pertinent to the Trust property.[49] Additionally, substantial discovery has been conducted in this case, and Plaintiffs have received numerous financial documents in relation to the Trust from Defendants, the Trust's accountant, and other subpoenaed third parties. Plaintiffs have been provided everything they have requested, and no genuine issue of fact remains as to this issue.

As discussed herein, Plaintiffs cannot prove damages at trial because the Court has excluded all evidence of damages. Even if an accounting were provided, it would parrot the numerous documents already provided to Plaintiffs and would serve little to no purpose in the litigation because Plaintiffs cannot present evidence of damages at trial. Therefore, Plaintiffs' request for an accounting is denied as moot.

### 3. Counts III-VI: Breach of Fiduciary Duty, Fraud and Enrichment Without a Cause

Plaintiffs seek damages from Defendants for breach of trust (Count III), breach of fiduciary duties (Count IV), fraud (Count V), and enrichment without cause (Count VI) (hereinafter

---

[49] [Doc. Nos. 78-4, p. 7, 78-5, p. 15, 78-6, p. 14, 78-7, p. 9]

collectively referred to as "Damages Claims"). As discussed below, the Court finds that these Damages Claim have prescribed and/or are perempted. Additionally, even if the Damages Claim are not prescribed or premepted, Plaintiffs cannot succeed at trial because the Court granted the Defendants' Motion to Exclude all Evidence of Damages.[50] Therefore, the Court finds that there is no genuine issue of material fact with respect to the Damages Claims.

### a. Plaintiffs Cannot Prove an Essential Element of Counts III-VI

The Court finds that the granting of Defendants' Motion to Exclude Evidence of Damages makes it impossible for Plaintiffs to prove an essential element in Counts III-VI and that, therefore, there can be no genuine question of material fact with respect to said Counts.

### i. Breach of Fiduciary Duty and Breach of Trust

In *Petitjean v. Hibernia National Bank of Lake Charles*, despite availability of expert witness testimony from a trusts expert as to damages, the court affirmed summary judgment dismissing a claim for breach of trust and breach of fiduciary duty. *Petitjean v. Hibernia Nat. Bank of Lake Charles*, 2008-1081 (La. App. 3 Cir. 3/4/09), *writ denied sub nom. Petitjean v. Hibernia Nat. Bank*, 2009-0714 (La. 5/15/09), 8 So. 3d 588. The court stated that "the plaintiffs cannot establish any loss or depreciation of the value of the trusts or loss of profit by any breach of trust. That is to say, the plaintiffs cannot establish this essential element of their case and, therefore, they cannot be successful at trial." *Id. citing* LA C.C. Art. 966(C)(2).

Here, Plaintiffs face a similar issue as the plaintiffs in *Petitjean* in that they will not be allowed to introduce any evidence of damages at trial. Therefore, because Plaintiffs claims for Breach of Trust and Breach of Fiduciary Duty lack an essential element, Plaintiffs are unable to

---

[50] [Doc. No. 100]

succeed at trial on these grounds. Accordingly, the Court Finds that summary judgment is appropriate as to Counts III and IV.

### ii.      Fraud

Fraud is defined in La. C.C. Art. 1953 as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. C.C. Art. 1953. In *Black Lake Land & Oil, L.L.C. v. Audubon Ins. Co.*, the court explained that under Louisiana law the elements of fraud are "1) a misrepresentation of material fact; 2) made with the intent to deceive; 3) reasonable or justifiable reliance by the plaintiff; and 4) resulting injury." *Black Lake Land & Oil, L.L.C. v. Audubon Ins. Co.*, No. 2:09 CV 02227, 2011 WL 4591087, at *2 (W.D. La. Sept. 29, 2011), *judgment entered*, No. 2:09-CV-2227, 2011 WL 4574542 (W.D. La. Sept. 29, 2011). The defendants in *Black Lake Land* argued that the claim could not survive a motion for summary judgment because the plaintiff could not prove damages. *Id*. at *4. The court agreed, stating that "there are not damages alleged by [plaintiff] sufficient to survive a 12(b)(6) motion to dismiss," and granted the defendants' 12(b)(6) motion to dismiss. *Id*.

Here, pursuant to the Court granting the Motion to Exclude all Evidence of Damages, Plaintiffs will not be allowed to present any evidence of a resulting damage or injury. Accordingly, summary judgment is appropriate because Plaintiffs will not be able to prove an essential element of their claim for fraud.

### iii.      Enrichment Without Cause

Enrichment without cause is codified in La. C.C. Art. 2298:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy

16

> declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
>
> The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.
>
> The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.

La. C.C. art. 2298. There are five prerequisites that must be satisfied to successfully invoke an action for enrichment without cause: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and the impoverishment; (4) there must be an absence of justification or cause for the enrichment and impoverishment; and (5) there must be no other remedy at law. *New Hotel Monteleone, Inc. v. First Nat. Bank of Com., Inc.*, 423 So. 2d 1305, 1309–10 (La. Ct. App. 1982); *citing Minyard v. Curtis Prod., Inc.*, 251 La. 624, 205 So. 2d 422 (1967)). Impoverishment is "the loss of assets, increase in liabilities, or the prevention of justified expectation of gain." Tate, *The Louisiana Action for Unjustified Enrichment: A Study in Judicial Process,* 51 Tul.L.Rev. at 447; *see also Coastal Env't Specialists, Inc. v. Chem-Lig Int'l, Inc.*, 2000-1936 (La. App. 1 Cir. 11/9/01), 818 So. 2d 12, 19; *see also Bamburg Steel Buildings, Inc. v. Lawrence Gen. Corp.*, 36,005 (La. App. 2 Cir. 5/8/02), 817 So. 2d 427, 438-39 (where the court held that "[f]inding no unjust impoverishment in this case, we conclude that the doctrine of [enrichment without cause] is not applicable[.]")

Without the ability to introduce evidence of damages, Plaintiffs will not be able to prove that they suffered the loss of assets, increase in liabilities, or the prevention of justified expectation of gain. Because impoverishment is an essential element of enrichment without cause, Count VI must be dismissed.

### b.  Counts III-VI Have Prescribed

Even if the Damages Claims were not now impossible to establish, the Court finds those claims have prescribed and/or are perempted.  La. R.S. 9:2234(A) provides:

> An action for damages by a beneficiary against a trustee for any act, omission, or breach of duty shall be brought within two years of the date that the trustee renders, by actual delivery or mail to the beneficiary...an accounting for the accounting period in which the alleged act, omission, or breach of duty arising out of the matters disclosed therein occurred. However, such actions shall in all events, even as to actions within two years of disclosure, be filed within three years of the date that the trustee renders an accounting for the accounting period in which the alleged act, omission, or breach of duty occurred.

La. R.S. 9:2234(A). Plaintiffs argue that La. R.S. 9:2234 applies only to disclosed matters and that the instant case is a suit about nondisclosed matters. They further argue that the 2016 Texas suit commenced the prescription time period, but the current action was still filed timely under the ten-year prescriptive period for personal actions. Plaintiffs' arguments are incorrect. In support of their argument, Plaintiffs cite to several cases, each of which is distinguishable from the instant suit.

In *Eureka Homestead Soc'y v. Zirinsky*, the court held that a claim for breach of fiduciary duty was subject to a ten-year prescriptive period under La. C.C. Art. 3499. *Eureka Homestead Soc. v. Zirinsky*, No. CIV. A. 94-2265, 1995 WL 542482, at *11 (E.D. La. Sept. 12, 1995). In *Eureka*, the plaintiffs' complaint alleged that:

> By virtue of their capacities as brokers, the defendants were Eureka's agents and as such owed to Eureka the duties of utmost fidelity and good faith, the duty to make known to Eureka the true facts of every matter relating to the accounts, and the duty not to take even the slightest advantage of Eureka.

*Id*. The defendants argued that the claim sounded in tort and was thus subject to a one-year prescriptive period. *Id*. The plaintiffs argued, and the court agreed, that the claim was "contractual or quasi-contractual in nature and [was] subject to the ten-year prescriptive period of Louisiana

18

Civil Code Article 3499." *Id*. The court found that the breach of fiduciary duty, as pled, "[was] not a simple claim of breach of ordinary care. Rather, it encompasses a claim for breach of the higher duty of loyalty owed by a fiduciary, thereby qualifying as a personal action subject to a 10-year prescriptive period." *Id*.

*Eureka* is distinguishable from this case in that it was a suit based on breach of fiduciary duty of a stockbroker[51], not that of a trust beneficiary. There is no mention of La. R.S. 9:2234 anywhere in the opinion. Therefore, while it is true that certain breaches of fiduciary duty are subject to a ten-year prescriptive period, *Eureka* does not apply to the facts of this case. Here, Plaintiffs specifically plead in Count III that Defendants "breached their fiduciary duties and damaged the Income and Principal Beneficiaries of [the Trust.]"[52] Plaintiffs sought redress pursuant to La. R.S. § 9:2201.[53] La. R.S. § 9:2201 deals with the liability of a trustee who commits a breach of trust and is therefore subject to La. R.S. § 9:2234.

In *Gerdes v. Estate of Cush*, the Fifth Circuit affirmed the trial court's determination that claims against an attorney who acted as a mandate were subject to a one-year prescriptive period. *Gerdes v. Est. of Cush*, 953 F.2d 201 (5th Cir. 1992). At issue was whether a claim against a mandatary for negligence and breach of fiduciary duty, stemming from a series of business transactions that turned out not to be lucrative, was a claim for breach of fiduciary duty, and thus, subject to La. C.C. Art. 3499's ten-year prescriptive period, or if it were an ordinary delictual action and subject to a one-year period under La. C.C. Art. 3492. *Id*. at 204. While setting out the issue, the court noted that "[t]he duty of loyalty which results from the position of trust

---

[51] The plaintiff sought damages for "trading losses, margin account interest, repurchase agreement margin loans, brokerage commissions and/or markups, and/or other losses and damages incurred by it as a result of unauthorized, unsuitable and excessive trading of securities by the defendant brokerage firms" *Id*. at *1.
[52] [Doc. No. 28, ¶ 115]
[53] [Id.]

distinguishes the fiduciary relationship. A cause of action for breach of fiduciary duty requires proof of fraud, breach of trust, or an action outside the limits of the fiduciary's authority." *Id*. (citations omitted). Plaintiffs cite to this language to support the notion that "breach of fiduciary duty claim was not a mere negligence claim, but it qualified as a personal action subject to 10-year prescriptive period."[54]

Plaintiffs' use of *Gerdes* is misguided, and the facts of the case are distinguishable from those here. First, it should be noted that the court in *Gerdes* held that the one-year prescriptive period applied to the plaintiff's claims because the district judge found as a matter of fact that no self-dealing or breach of loyalty occurred. *Gerdes*, 953 F.2d at 204. At best, the language Plaintiffs cite in *Gerdes* is dicta because the court ultimately found that La. C.C. Art. 3499 did not apply. Second, the facts are distinguishable from those here because the case did not involve breach of fiduciary duty of a trustee. The defendant in *Gerdes* was a mandatary who negotiated a business deal on behalf of a client. Nowhere in the opinion is La. R.S. § 9:2234 mentioned. Therefore, because *Gerdes* did not deal with the duties of a trustee, and the passage cited by Plaintiffs was dictum, the Court finds that *Gerdes* does not apply here.

In *Hotel Monteleone, Inc. v. First Nat'l Bank of Commerce, Inc.*, the court held that a plaintiff's claims were barred by prescription/peremption. *New Hotel Monteleone*, 423 So. 2d 1305. The court noted that claims for unjust enrichment are subject to a ten-year prescriptive period under La. C.C. Art. 3544. *Id*. at 1309. The court held that a plaintiff's claims had prescribed because prescription on a claim to rescind a contract for absence of cause began to run in 1963, but the plaintiffs did not file suit until 1978. *Id*.

---

[54] [Doc. No. 93, p. 20]

*Monteleone* is distinguishable from the instant case. Again, the court in *Monteleone* was not dealing with a case about a trust. At issue in *Monteleone* were claims centered around a contract, whether cause still existed for that contract, and whether enrichment without cause had occurred. Nowhere in the opinion is La. R.S. § 9:2234 mentioned. Plaintiffs' claims for enrichment without cause in the instant case center around Defendants allegedly diverting income that belonged to income and principal beneficiaries of the Trust.[55] *Monteleone* did not deal with beneficiaries of a trust and action of a trustee, so it is not applicable here.

In *Minyard v. Curtis Products, Inc.*, the court applied a ten-year prescriptive period under La. C.C. Art. 3544. *Minyard v. Curtis Prod., Inc.*, 251 La. 624, 205 So. 2d 422 (1967). The court found that the claim for unjust enrichment was not a tort claim, but rather a quasi-contract claim and thus subject to ten-year prescription. *Id*. at 653. *Minyard* is also distinguishable from the instant case because it did not deal with a trustee or beneficiaries of a trust. La. R.S. § 9:2234 is not mentioned anywhere in the opinion because no trust was involved in the case. Therefore, *Minyard* does not apply here.

### i.    La. R.S. 9:2234 Applies to Counts III-VI

Under Louisiana law, La. R.S. 9:2234 applies to claims brought by beneficiaries against trustees for breach of trust, breach of fiduciary duty, fraud, and enrichment without cause. In *In re Royal Alice Props., LLC*, a beneficiary of a trust sued the trustee for breach of duty regarding that trust and requested damages and an accounting of the trust funds. *In re Royal Alice Properties, LLC*, 619 B.R. 839 (Bankr. E.D. La. 2020). The beneficiary claimed that it never received an accounting. *Id*. at 863. The court held that under Louisiana law, the prescription period for such claims is two years, but prescription had not yet begun. *Id*. at 863. The court also noted that "the

---

[55] [Doc. No. 28, ¶¶ 123-131]

prescriptive periods provided for in La. R.S. 9:2234 are triggered by an accounting by the trustee." *Id*. (citations omitted).

In *Griffin v. JP Morgan Chase & Co*., the court held that claims for unjust enrichment, fraud, and breach of fiduciary duty were subject to "the prescriptive/peremptive periods of Section 9:2234." *Griffin v. JPMorgan Chase & Co.*, No. CIV. A. 06-1589, 2009 WL 935954 at *4 (W.D. La. Apr. 7, 2009), *See also Wright v. Larson*, 42,101 (La. App. 2 Cir. 5/2/07), 956 So. 2d 202, *writ denied*, 2007-1181 (La. 9/21/07), 964 So. 2d 335. The court noted subsections B, C, and D of La. R.S. 9:2234 which provide that:

> B. Any action by a beneficiary against a trustee other than those described on Subsection A of this Section is prescribed by two years beginning from the date that the trustee renders his final account to the beneficiary.
> C. The provisions of this Section are remedial and apply to all causes of action for damages without regard to the date when the alleged act, omission, or breach of duty occurred. The two-year and three-year periods of limitation provided for in this Section are peremptive periods within the meaning of Civil Code Article 3458, and in accordance with Civil Code Article 3461 may not be renounced, interrupted, or suspended. Notwithstanding the foregoing, a beneficiary shall have one year from July 9, 1999, to bring an action for damages against a trustee arising out of an act, omission, or breach of duty for a transaction disclosed in any prior accounting.
> D. Notwithstanding any oilier provision of law, all actions brought in the state against any trustee, the prescriptive and peremptive period shall be governed exclusively by this Section.

La. R.S. § 9:2234. The court reasoned that, because the only source of fiduciary duties that the beneficiaries relied upon was the beneficiary-trustee relationship, it would "be anomalous to hold that the trust officers owed him fiduciary duties under the Trust Code wile disallowing those officers to claim the benefits of the prescriptive/peremptive periods of the Trust Code." *Id*. at *4.

Here, Counts III-VI are all prescribed under La. R.S. 9:2234. Since at least 1996, Plaintiffs have been provided a schedule K-1 and a detailed financial statement, which includes an

accounting of all assets, liabilities, income, expenses, and other financial information pertinent to the Trust property. Plaintiffs never timely objected to these accountings. La. R.S. § 9:2234 is clear. Actions for breach of duty in relation to a trust must be brought within two years of the date on which an accounting is rendered, or, at the latest, within three years of the date that the trustee renders an accounting for the accounting period in which the alleged act, omission, or breach of duty occurred. Plaintiffs even admit that their February 2016 action filed in Texas commenced prescription in this case.[56] Plaintiffs did not file this suit until December 26, 2019[57], over three years after the Texas suit was filed[58], and decades after the respective financial statements were mailed to Plaintiffs. The Court also is not certain that the claims made by Plaintiffs were prescribed before the 2016 suit was filed since the record is clear that Plaintiffs have received accountings since at least 1996. Any claim based on an accounting made three years prior to the Texas suit (February 19, 2013), or three years prior to the instant suit (December 29, 2016), has clearly prescribed.

Plaintiffs' assertion that they have claims related to the purported 1994 Trust also must be dismissed. Plaintiffs have provided no evidence of the existence of the purported 1994 Trust aside from one bank filing where there is an error as to the date of the Trust.[59] No evidence of assets being moved into or out of the purported 1994 trust, evidence of trust documents establishing a 1994 trust, or any other evidence has been provided. Additionally, Plaintiffs' claims against Defendants related to the purported 1994 Trust are claims against Defendants as co-trustees of the Trust. Plaintiffs do not claim that they were entitled to receive funds from the purported 1994 trust.

---

[56] [Doc. No. 93, p. 14]
[57] [Doc. No. 1]
[58] The Texas suit was filed on February 19, 2016 [Doc. No. 78-12]. The instant suit was filed three years, ten months and ten days afterwards on December 29, 2019.
[59] [Doc. No. 28-2]

Rather, they claim that assets were diverted away from the Trust without Plaintiffs' knowledge or consent. Those claims would be subject to the same prescriptive periods which Plaintiffs admitted commenced no later than 2016, over three years before this suit was filed. Therefore, even if the purported 1994 trust did exist, and Plaintiffs were harmed by it, their claims relating to the harm would be prescribed and/or perempted.

Accordingly, the Court finds that Counts III-VI have all prescribed and/or are perempted.

## I.      CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that Defendants William V. King, Tobe Ayes Leonard, and Michael Veron's Motion for Summary Judgment [Doc. No. 78] is **GRANTED.**

MONROE, LOUISIANA, this 16th day of September 2022.

_____
Terry A. Doughty
United States District Judge